IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TERESA HODGE, )
)
Plaintiff, )
)
v. ) 1:18CV206
)
ANDREW SAUL, )
Commissioner of Social Security,[1] )
)
Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Teresa Hodge ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on August 8, 2014, alleging a disability onset date of July 26, 2013. (Tr. at 11, 168-71.)[2] Her claim was denied initially (Tr. at 56-65, 79-87), and that determination was upheld on reconsideration (Tr. at 66-76, 89-96).

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #8].

Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 97-98.) Plaintiff attended the subsequent video hearing on February 17, 2017, along with her attorney and an impartial vocational expert. (Tr. at 11.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 21), and, on January 18, 2018, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since July 26, 2013, her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease; carpal tunnel syndrome; migraine headaches; and obesity[.]

(Tr. at 13.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 13-14.) Therefore, the ALJ assessed

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

Plaintiff's RFC and determined that she could perform light work with the following, additional restrictions:

> [Plaintiff] can sit for six out of eight hours with normal breaks, but requires the ability to make a postural adjustment without being off-task. [Plaintiff] can stand and/or walk for a combined six hours, but is best suited for an occupation with the opportunity to alternate sitting and standing at will at the workstation. [She] can occasionally perform overhead reaching bilaterally. [Plaintiff] can perform no repetitive fingering. [She] can perform frequent pushing and pulling. [She] can occasionally climb ramps and stairs, but never climb ladders or scaffolds. [Plaintiff] can occasionally kneel, stoop, crawl, and crouch. [She] needs to avoid exposure to unprotected heights and workplace hazards. [She] cannot commercially operate a motor vehicle. [Plaintiff] can tolerate occasional exposure to extreme cold, but [she] must avoid exposure to heavy vibrations. [She] is best suited for an occupation that is not performed with high production quotas and not in a fast-paced work environment.

(Tr. at 14.) The ALJ found at step four of the sequential analysis that all of Plaintiff's past relevant work exceeded her RFC. (Tr. at 20.) However, the ALJ further determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform her other jobs that exist in significant numbers in the national economy. (Tr. at 20-21.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 21.)

Plaintiff now contends that the ALJ erred in when questioning the vocational expert at step five of the sequential analysis. First, she asserts that the ALJ failed to obtain a reasonable explanation for the apparent conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles ("DOT") regarding the reaching requirements for two of the jobs identified at step five. In addition, Plaintiff argues that the hypothetical questions to the vocational expert failed to properly account for limitations from Plaintiff's migraine headaches and carpal tunnel syndrome. In a separate claim, Plaintiff also contends that that

6

the ALJ who issued her administrative decision was not constitutionally appointed. Therefore, she asserts that her case merits remand under the Appointments Clause. After a thorough review of the record, the Court finds that none of Plaintiff's claims require remand.

A. Step Five Analysis

1. DOT Conflict

Plaintiff first challenges the ALJ's reliance on the vocational expert's testimony at step five of the sequential analysis. Specifically, the Plaintiff contends that the Vocational Expert's testimony conflicted with the DOT as to two of the three jobs identified, but that the ALJ failed to obtain a reasonable explanation for the conflict. In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

In the instant case, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to two of the three representative jobs available in the national economy that Plaintiff could perform: Cashier II (211.462-101) and Information Clerk (237.367-018). (Tr. at 21.) Both of these positions, as defined by the DOT, require <u>frequent reaching</u>, with "frequent" further defined as occurring

7

"from 1/3 to 2/3 of the time," and with "reaching" further defined as "[e]xtending hand(s) and arm(s) in any direction." However, both Plaintiff's RFC and the hypothetical question based upon it limited Plaintiff to <u>occasional</u> overhead reaching bilaterally. (Tr. at 14, 49.) At no point did the ALJ identify the apparent inconsistency between Plaintiff's RFC and the frequent reaching required to perform the jobs identified at step five, let alone ask the vocational expert to explain the apparent conflict and receive a "reasonable explanation for any discrepancy." See Pearson, 810 F.3d at 209.

However, as Defendant correctly points out, this error is harmless. One job identified by the Vocational Expert, Counter Clerk (249.366-010), only involves <u>occasional</u> reaching as reflected in the DOT. Thus, there is no unresolved conflict between the DOT and the Vocational Expert's testimony as to this position. As such, this position remains as a representative occupation, with 250,000 positions in the national economy. Therefore, despite the ALJ's error at step five, substantial evidence still supports the finding that Plaintiff can perform work that exists in significant numbers in the national economy.

2. Hypothetical Question to the Vocational Expert

Plaintiff also contends that the ALJ failed to properly include limitations resulting from her migraines and carpal tunnel syndrome in the hypothetical question to the Vocational Expert.

With regard to her migraines, Plaintiff argues that her headaches would cause her to be off task, absent from work, or otherwise incapacitated beyond the limitations set out by the ALJ. However, to the extent Plaintiff contends that the hypothetical question to the Vocation Expert failed to account for all of Plaintiff's limitations, the Court notes first that the

8

hypothetical question to the Vocational Expert was identical to the ALJ's functional findings in the RFC. That is, in the RFC, the ALJ specifically found that Plaintiff "is best suited for an occupation that is not performed with high production quotas and not in a fast-paced work environment." (Tr. at 14.) The hypothetical question to the Vocational Expert similarly provided that "this hypothetical individual will be best suited for an occupation with no high production quotas and not any fast-pace work environments." (Tr. at 49.) Thus, the hypothetical question to the Vocational Expert clearly accounted for the functional limitations reflected in the RFC.

In addition, in setting the RFC the ALJ specifically explained her analysis with respect to Plaintiff's migraines. The ALJ noted Plaintiff's testimony regarding her migraine headaches (Tr. at 15), reviewed the medical evidence at length (Tr. at 16-17), noted that the records reflected that Plaintiff's "migraines were well-controlled" (Tr. at 17, 847), and concluded that:

> Due to [Plaintiff's] migraines, she has been limited to low stress work. However, additional limitations are not supported by the evidence of record. Despite allegations of 20 migraines a month, the evidence supports that they were well-controlled with medications. Additionally, [Plaintiff] testified that she was able to work with her headaches.

(Tr. at 17.) Plaintiff contends that the ALJ nevertheless erred in failing to include a limitation to "low stress" work in the hypothetical question to the Vocational Expert, and further contends that it should be up to the Vocational Expert to determine if the representative occupations were "low stress." However, it is the function of the ALJ to consider the record and articulate the relevant functional limitations in the RFC. The ALJ did so here by concluding that Plaintiff could work in occupations with no high production quotas and no fast-pace work environments. The basis for this determination is sufficiently explained in the

9

ALJ's decision. Indeed, myriad cases in this district have noted that ALJs frequently, and without error or objection, define low stress work as work not requiring fast-paced production or rigid quotas. See, e.g. Sizemore v. Berryhill, 878 F.3d 72, 79 (4th Cir. 2017) (ALJ defined "a low stress work setting" as "non-production jobs [without any] fast-paced work"); Green v. Berryhill, No. TMD 15-3467, 2017 WL 1048155, at *8 (D. Md. Mar. 20, 2017) (ALJ defined limitation to low-stress work defined as occasional decision-making and no fast-paced production work); Winston v. Colvin, No. 4:13–CV–221-FL, 2015 WL 450835, at *3 (E.D.N.C. Feb. 3, 2015) (ALJ defined a low stress work setting as one that was non-production pace or quota based, with no more than occasional changes in the work setting, and no more than occasional decision-making); Nelson v. Colvin, No. 4:11–03367–TER, 2013 WL 4647531 (D.S.C. Aug. 29, 2013) (ALJ's RFC finding included a restriction to a low stress environment, which was defined as no fast-paced production or rigid quotas). Here, the ALJ reasoned that Plaintiff was limited to low stress work as a result of her migraines, and then included the specific limitations in Plaintiff's RFC for non-fast-paced, non-production quota work. Thus, read as a whole, the ALJ's decision clearly accounted for restrictions related to Plaintiff's migraines by limiting her to work "that is not performed with high production quotas and not in a fast-paced work environment."[5]

Plaintiff also asserts that the ALJ failed to include handling and feeling limitations resulting from her carpal tunnel syndrome. However, Plaintiff fails to point to any evidence

---

[5] Moreover, it is the ALJ's responsibility to define the Plaintiff's functional limitations in the RFC, and some courts have actually remanded cases if the ALJ failed to provide specific functional limitations and instead simply included a limitation in the hypothetical question to "low stress" work. See e.g. Lewis v. Astrue, No. 1:10CV001, 2010 WL 4104521, at *1 (W.D.N.C. Oct. 18, 2010). As noted above, translating Plaintiff's limitations into functional limits is a matter for the ALJ, and was not a matter to be left to the Vocational Expert as Plaintiff contends.

of such limitations aside from her own testimony, in which Plaintiff claimed that she experiences numbness in her hands and sometimes has difficulty grasping smaller items. (Tr. at 15, 42.) Notably, the ALJ found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," and Plaintiff does not challenge this finding. (Tr. at 15.) No medical providers opined that Plaintiff had any manipulative limitations (Tr. at 18-19, 62, 72, 603), her carpal tunnel syndrome "was improved with a wrist brace" (Tr. at 17, 845), and the ALJ noted that Plaintiff herself reported that she could perform a wide range of household chores including sweeping, mopping, vacuuming, and washing dishes and laundry (Tr. at 15, 18, 43-44). Nevertheless, in light of Plaintiff's more recent diagnoses of mild sensorimotor polyneuropathy and moderate bilateral median mononeuropathy, and giving some credence to Plaintiff's self-reported limitations, the ALJ limited Plaintiff to "no repetitive fingering." (Tr. at 14, 18, 19, 841.) The ALJ also reduced Plaintiff's exertional capacity to light, rather than the medium work opined by both the State agency medical consultants and the consultative examiner. (See Tr. at 14, 18.) Plaintiff fails to point to any evidence that her carpal tunnel syndrome merited any further limitations, and none is apparent from the record. Substantial evidence therefore supports Plaintiff's RFC assessment and the hypothetical question based upon it.

B. Appointments Clause

In her next argument, Plaintiff, citing Lucia v. Securities & Exch. Comm., 585 U.S. ___, 138 S. Ct. 2044 (2018), seeks a new hearing on the grounds that the ALJ who issued her

11

administrative decision was not constitutionally appointed. In considering this contention, the Court notes that similar claims have been considered and rejected in prior cases in this District:

> In <u>Lucia v. Securities and Exchange Commission</u>, the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. 138 S. Ct. at 2055. While this issue has not been addressed by the Fourth Circuit Court of Appeals, District Courts within the Circuit have held under <u>Lucia</u> that only "one who makes a timely [Appointment Clause] challenge" is entitled to relief. <u>See e.g.</u>, <u>Garrison v. Berryhill</u>, No. 1:17-CV-00302-FDW, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018) (citing <u>Lucia</u>, 138 S. Ct. at 2055) (internal citation omitted); <u>see also</u> <u>Britt v. Berryhill</u>, No. 1:18-CV-00030-FDW, 2018 WL 6268211, at *2 (W.D.N.C. Nov. 30, 2018) ("To the extent <u>Lucia</u> applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."). In <u>Lucia</u>, the Supreme Court acknowledged the challenge was timely because it was made before the Commission.
>
> Plaintiff's arguments to the contrary are unpersuasive. Although it is not required for one to raise a constitutional issue solely before the ALJ, <u>Lucia</u> made it clear that one must challenge their issue at some point during the administrative proceedings. <u>Lucia v. S.E.C.</u>, 138 S. Ct. at 2055 ("To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which <u>Lucia</u> is entitled."). Unfortunately, Plaintiff did not raise this issue at any point during his proceedings with the Social Security Administration—not to the presiding ALJ, or to the Appeals Counsel. To the extent <u>Lucia</u> applies to Social Security ALJs, Plaintiff has forfeited his Appointment Clause issue by failing to raise it during his administrative proceedings.

<u>Martin v. Berryhill</u>, No. 1:18CV115, Report and Recommendation (M.D.N.C. Dec. 11, 2018) (Webster, M.J.), adopted by Order (M.D.N.C. Jan. 4, 2019) (Eagles, J.); <u>see also</u> <u>Smith v. Berryhill</u>, No. 1:18CV329, Report and Recommendation (M.D.N.C. April 23, 2019) (Webster, M.J.), adopted by Judgment (M.D.N.C. May 10, 2019) (Biggs, J.).

In the present case, as in <u>Martin</u> and <u>Smith</u>, Plaintiff has forfeited her Appointments Clause issue by failing to raise it during her administrative proceedings. This determination is

consistent with the great weight of authority since Lucia. See, e.g., Lewark v. Saul, No. 2:18-CV-45, 2019 WL 2619370 (E.D.N.C. June 26, 2019); Morrison v. Berryhill, No. 5:18-CV-156, 2019 WL 2607026 (W.D.N.C. June 25, 2019); Edwards v. Berryhill, No. 2:18CV121, 2019 WL 1919167, at *4 (E.D. Va. Apr. 29, 2019); Shelton v. Berryhill, No. 2:17CV609, 2019 WL 1330897, at *11-12 (E.D. Va. Mar. 25, 2019); Shipman v. Berryhill, No. 1:17-CV-00309-MR, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019); Velasquez v. Berryhill, No. CV 17-17740, 2018 WL 6920457, at *3 (E.D. La. Dec. 17, 2018); Abbington v. Berryhill, No. CV 1:17-00552-N, 2018 WL 6571208, at *8 (S.D. Ala. Dec. 13, 2018); Weatherman v. Berryhill, No. 5:18-CV-00045-MOC, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10, 2018); Pearson v. Berryhill, No. 17-4031-SAC, 2018 WL 6436092, at *4 (D. Kan. Dec. 7, 2018); Faulkner v. Comm'r of Soc. Sec., No. 117CV01197STAEGB, 2018 WL 6059403, at *3 (W.D. Tenn. Nov. 19, 2018); Flack v. Comm'r of Soc. Sec., No. 2:18-CV-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018); Garrison v. Berryhill, No. 1:17cv302, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018); Davidson v. Comm'r of Soc. Sec., No. 2:16CV102, 2018 WL 4680327, at *2 (M.D. Tenn. Sept. 28, 2018); Stearns v. Berryhill, No. C17-2031, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018); Karen S. v. Comm'r of Soc. Sec., No. 2:17CV302, 2018 WL 4053327, at *3 n.1 (E.D. Wash. Aug. 24, 2018); Trejo v. Berryhill, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). Therefore, Plaintiff's claim should be dismissed.[6]

---

[6] Notably, several of these cases are presently on appeal to their respective Courts of Appeal, including Shelton v. Berryhill (E.D. Va.), on appeal to the Fourth Circuit, No. 19-1715 (4th Cir.). Even more notably, two recent decisions in the Eastern District of North Carolina have reached the opposite conclusion, and found that an Appointments Clause challenge need not be raised in the administrative proceeding, that the plaintiff's Lucia claim was not forfeited, and that remand was required. See Probst v. Berryhill, No. 5:18CV130, 2019 WL 1749135 (E.D.N.C. March 22, 2019); Bradshaw v. Berryhill, 372 F. Supp. 3d 349 (E.D.N.C. 2019). Those decisions are also on appeal to the Fourth Circuit. Bradshaw v. Berryhill, No. 19-1531 (4th Cir.), Probst v. Berryhill, No. 19-1529 (4th Cir.) Given these developments, it would be within the discretion of the Court to

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #13] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #15] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 9th day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

elect to stay the present case pending resolution of those issues by the Fourth Circuit. However, the present Recommendation has been entered in light of the prior decisions in this District in <u>Martin</u> and <u>Smith</u> and in order to address the additional, non-<u>Lucia</u> claims presented for resolution.